UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

KEVIN SEDDON and
PENG LEE, Individually and
Derivatively as Shareholders of
HomeSafe Inspection, Inc.                                              PLAINTIFFS

V.                                          CIVIL ACTION NO. 3:06CV151-B-S

CHRIS BLANE, Individually,
STEVEN BARNETT, Individually,
HOMESAFE INSPECTION, INC., and
HOMESAFE PARTNERS, LLC                                                 DEFENDANTS

**ORDER**

This cause comes before the court upon the parties' joint motion to dismiss the derivative claims with prejudice. Upon due consideration, the court finds that the motion is well taken and shall be granted.

On November 9, 2006, the plaintiffs, Kevin Seddon and Peng Lee, individually and derivatively as shareholders of HomeSafe Inspection, Inc., brought this action against the defendants in the Chancery Court of Lafayette County, Mississippi, alleging, inter alia, breach of contract and breach of fiduciary duty and seeking a declaratory judgment and specific performance of a stock purchase agreement. The defendants timely removed the case to this court on December 13, 2006, denying any liability whatsoever.

HomeSafe Inspection provides residential inspection services using its proprietary technology to detect the presence of termites or other destructive insects or other latent defective conditions of a property. Seddon and Lee represent the majority shareholders of HomeSafe Inspection and serve as the company's president and vice-president respectively. They also serve on the company's board of directors.

The defendants, Blane and Barnett, decided to invest in HomeSafe Inspection through a stock purchase agreement which provides in part that Blane and Barnett have the right to assign their rights and interests to a corporation or other entity formed for the purpose of acquiring the shares. Blane and Barnett formed defendant HomeSafe Partners, LLC, and assigned any rights and interests they had in the stock purchase agreement to that company.

Blane and Barnett also own a company known as CSPAN Financial, LLC ("CSPAN"), an equipment leasing company which raised funds and purchased the equipment that HomeSafe Inspection uses in its home inspections. CSPAN leased that equipment to HomeSafe Inspection for a monthly fee. HomeSafe Inspection became delinquent on the lease payments owed to CSPAN. The plaintiffs have acknowledged that the company owes CSPAN the amount of $146,199.06. CSPAN filed a legal action against HomeSafe Inspection in the Circuit Court of St. Lucia County, Florida, alleging breach of equipment lease by HomeSafe Inspection and the failure to cure the default under the equipment lease.

Tobin Maginnis is a minority shareholder of HomeSafe Inspection. He owns 30,000 shares of preferred stock, which represents approximately 1.2% of the total outstanding shares, both common and preferred, prior to the restructuring proposed in the settlement agreement. Maginnis filed an objection to the settlement agreement. The court has examined the settlement agreement, the parties' joint motion, the objection, and the parties' response to the objection and is ready to rule.

Federal Rule of Civil Procedure 23.1 provides that a derivative action "may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23.1(c). "The burden of showing that a proposed settlement of a shareholders' derivative action is fair,

reasonable, and adequate, and that acceptance of its terms is in the best interest of the corporation and its shareholders, is on the proponents of the settlement." *Maher v. Zapata Corp.*, 714 F.2d 436, 454 (5th Cir. 1983). "Settlements of shareholder derivative actions are particularly favored because such litigation is 'notoriously difficult and unpredictable.'" *Id.* at 455 (quoting *Schimmel v. Goldman*, 57 F.R.D. 481, 487 (S.D.N.Y. 1973)). In approving or disapproving the settlement of a shareholders' derivative action, "the district court must determine that there has been no fraud or collusion in arriving at the settlement agreement, and that it is fair, reasonable, and adequate." *Id.* The court is afforded wide discretion in this task and "should not decide the merits of the action or attempt to substitute its own judgment for that of the parties." *Id.*

The proposed settlement agreement in the case at bar requires HomeSafe Partners to transfer back to HomeSafe Inspection 709,179 shares of HomeSafe Series-A Convertible Preferred Stock and allows the Blane Group (i.e., Blane, Barnett, and HomeSafe Partners) and CSPAN collectively to retain 370,821 shares of HomeSafe Series-A Convertible Preferred Stock for their prior monetary investments into HomeSafe Inspection. The agreement further provides that HomeSafe Inspection will cancel the 709,179 shares. All other shareholders retain their shares. In lieu of continuing the Florida action to collect the debt owed by HomeSafe Inspection, CSPAN has converted $146,199.06 from debt to equity in HomeSafe Inspection resulting in 94,548 shares of HomeSafe Inspection Series-A Convertible Preferred Stock to be issued to CSPAN by HomeSafe Inspection.[1]

---

[1]The calculation resulting in this figure is set forth as follows: $1,670,000 (the amount agreed to be paid to HomeSafe Inspection by or on behalf of the Blane Group) divided by 1,080,000 (the total number of shares held in the name of HomeSafe Partners), equals $1.54629630 per share; such amount is divided into $146,199.06 (the current amount of principal owed by HomeSafe Inspection to CSPAN),

The court will now examine Mr. Maginnis' objections individually:

1. "Opaque Business Operation." Mr. Maginnis asserts that he was ousted from the day to day operation of HomeSafe Inspection in April 2007 and contends, "I simply do not know enough about this case or the status of HomeSafe, Inc., to make an informed decision." The court finds no substantive objection here that would affect the proposed settlement agreement. Mr. Maginnis had all the rights available to him under the Mississippi Business Corporation Act, Miss. Code Ann. § 79-4-1.01 et seq., which includes, inter alia, a shareholder's right to inspect corporate records.

2. "No Statement of Approval by HomeSafe Board of Directors." In this objection Mr. Maginnis states that the agreement ignores HomeSafe's board of directors, implying that board approval is a necessary element to the settlement of this action. The record reflects no requirement of board approval for settlement. Regardless, the parties to this action represent all the members of the board of directors or otherwise have the power to appoint those members. This objection is, thus, moot.

3. "Unfair Stock Apportionment." Mr. Maginnis objects to the stock apportionment proposed in the settlement agreement arguing that the non-party stockholders' proportion decreased and, therefore, reduced in value.[2] This is an inaccurate statement. The proposed transaction at issue reduces all outstanding stock from 2,500,923 shares down to 1,791,744 by

---

which equals 94,548 shares of HomeSafe Inspection Series-A Convertible Preferred Stock.

[2]Mr. Maginnis appears also to assert that he paid $2.56/share for his 30,000 shares and that the proposed value of the debt-for-equity swap reduces his share value to $1.55/share. The court finds that the $1.55/share value is fair, reasonable, and adequate as it reflects the price of the initial offering of the stock to shareholders and that the decision is in the best interest of the corporation for the reasons outlined under the court's analysis of Objections 3, 4, and 5.

canceling 709,179 shares of the Series-A Preferred Stock. As a result, every shareholder in HomeSafe Inspection with the exception of HomeSafe Partners will own more of the company on a percentage basis than prior to the settlement. According to the parties, the $1.54629630 value, which was selected because it was the price of the initial offering of the stock to shareholders, "was used to calculate the price of what HomeSafe Partners keeps and what is transferred to CSPAN Financial, except that CSPAN Financial receives no value for accrued interest or default interest, which if added, would be very substantial, and CSPAN would be entitled to a lot more shares had HomeSafe Inspection, Seddon, and Lee not negotiated that away." The parties further assert that by using the original value of the issued shares, the company avoids any inadvertent tax consequences for using any value higher or lower than what was initially paid per share on all sides. These proposals appear to be fair, reasonable, and adequate and in the best interest of the corporation, and the court finds no merit to Mr. Maginnis' objection on this point.

4. "Illusory Stock Distribution." Mr. Maginnis states that the settlement agreement "suggests that 1,080,000 shares were provided by HomeSafe Inspection (HSI) to HomeSafe Partners (HSP) and valuation of the stock based upon their promise to pay $1,670,000 for the shares. However, in Sections 1.8 and 2.2 it is obliquely mentioned that HSP only holds 803,727 shares, yet the Agreement is structured as if HSP held the 1,080,000 shares previously described."

It appears Mr. Maginnis misunderstands the calculation used to reach the figures involved in the proposed restructuring. As the parties explain, "Of the 1,080,000 shares owned by HomeSafe Partners, it retains 276,273 shares. 803,727 plus 276,273 is 1,080,000." The

agreement provides that HomeSafe Partners will transfer back to HomeSafe Inspection 803,727 shares. HomeSafe Inspection will simultaneously issue 94,548 shares to CSPAN and cancel 709,179 shares. 803,727 represents the number required to cancel 709,179 and reissue 94,548 shares to CSPAN. The court finds that all shareholders will benefit from this transaction because each individual shareholder's proportionate share of the company will increase (with the exception of HomeSafe Partners).

5. "Stock Dilution." Mr. Maginnis asserts that the proposed agreement dilutes the value of his shares. Mr. Maginnis is mistaken. As outlined above, after the proposed settlement agreement, Mr. Maginnis will own 30,000 shares of a company that will have 709,179 less shares than before, thereby increasing his proportionate share of the company.

6. "Inconsistent Stock Valuation." Mr. Maginnis here suggests that the debt-for-stock equity swap agreement between HomeSafe Inspection and CSPAN is inappropriately valued and that CSPAN's "leasing debt would be worth less stock and should be valued separately." Mr. Maginnis fails to provide the court with any basis for this assertion, and the court must reject his objection as speculative and conclusory.

7. "Unknown Amount of Corporate Stock." Here Mr. Maginnis alleges that "the Agreement does not describe the total number of HomeSafe shares and how the number of shares issued have changed from date of incorporation to the present." Exhibit B to the proposed settlement agreement details all the shareholder positions relevant to the agreement before and after the restructuring provided by the agreement. This objection is without merit.

The court finds no evidence of collusion or fraud and no merit to any of Mr. Maginnis' objections or alternative proposals. The settlement agreement appears to be fair, reasonable, and adequate and in the best interest of the corporation and its shareholders.

Accordingly, the court finds that the settlement agreement should be and the same is hereby **APPROVED**. The parties' joint motion to dismiss the derivative claims with prejudice is well taken and is hereby **GRANTED**.

**SO ORDERED AND ADJUDGED** this, the 22nd day of February, 2010.

                                             */s/ Neal Biggers*
                                            **NEAL B. BIGGERS, JR.**
                                            **SENIOR U.S. DISTRICT JUDGE**